**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
ROBERT DAMERON,                     :
                                    :  Civil Action No. 09-1986 (RBK)
            Petitioner,             :
                                    :
        v.                          :        **O P I N I O N**
                                    :
JEFF GRONDOLSKY,                    :
                                    :
            Respondent.             :
_____:

**APPEARANCES:**

Robert Dameron, Pro Se              Jordan Milowe Anger
#11885-084                          Office of the U.S. Attorney
Federal Correctional Institution    970 Broad Street, 7th Floor
East, P.O. Box 2000                 Newark, NJ 07102
Fort Dix, NJ 08640                  Attorney for Respondent

**KUGLER**, District Judge

   Petitioner Robert Dameron, a prisoner confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241[1] challenging the results of a prison disciplinary

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:

   (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...

   (c) The writ of habeas corpus shall not extend to a prisoner unless ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States....

proceeding.  The respondent is Warden Jeff Grondolsky.  For the reasons set forth below, the petition will be denied.

## BACKGROUND

On May 30, 2007, Petitioner was sentenced to a term of imprisonment of 120 months following his guilty plea to various drug offense charges in the United States District Court, Western District of Virginia.  See United States v. Dameron, Criminal No. 06-cr-0047 (W.D. Va.).  He is presently confined pursuant to that sentence.

On May 18, 2008, Petitioner was designated to and assigned and housed at Federal Prison Camp ("FPC") Beckley in West Virginia.  On that date, at approximately 8:20 p.m., Petitioner was observed by Recreational Specialist Ryan Friebel approximately 100 yards off of the institutional grounds, wearing two wool caps around his head and neck, and with duct tape covering his name tag.  Petitioner started to run, but when Officer Friebel requested him to approach and get down on the ground, Petitioner complied.  When asked what he was doing off institutional grounds, Petitioner replied that he was "looking for snuff."

The next day, Petitioner was served with a copy of an Incident Report charging Petitioner with violating code 200, Escaping from an Open Institution.  The Incident Report stated:

> On the above mentioned time and date I conducted a routine shakedown of the wood line behind camp service.

> I heard a loud noise in the woods.  I then noticed an individual wearing a green uniform with a wool cap covering his head.  The individual was also wearing a wool cap around his neck.  The individual was about 100 yard[s] off institutional grounds.  I called the Camp Message Center office to assist me.  However, the individual began running up the trail that I was stand[ing] on.  When he got about 20 yards from me I gave an order for him to get up hear [sic] and the individual complied.  I instructed the individual to get on the ground and he did.  I then told him to remove his wool camp [sic] and I noticed the individual had duct tape covering his name tag.  I removed the tape covering his name tag. ... I then asked Inmate Dameron what he was doing in the woods.  He stated looking for snuff.  Officer Strickland arrived and escorted Inmate Dameron to the Message Center.  I searched the wood line however, I did not find anything.  I returned to the Message Center and then I escorted the individual to the Lt.s Office without incident.

(Respondent's Exhibit "RE" 4).  Petitioner was placed in administrative detention pending the hearing.

On May 28, 2008, an initial hearing was held before a Unit Disciplinary Committee, which referred the Incident Report to the Disciplinary Hearing Officer ("DHO") due to the sanctions which would be commensurate with the offense.  (RE 4).

On June 3, 2008, the DHO held a hearing.  Petitioner was advised of his rights and waived his right to staff representation.  At the DHO hearing, Petitioner admitted the charges.  He stated that he left camp without permission, that he saw the boundary signs and went past them anyway.  He also stated that he wore wool caps and hid his name tag because he was trying to hide his identity from other inmates so they could not tell

staff who he was if they saw him going into the woods. Petitioner stated that he threw some tobacco into the woods about a month and a half before, and was searching for it.  Petitioner did not request any witnesses.  Presented as documentary evidence at the DHO hearing were memos from the officers involved, photos of the boundary signs posted to mark the camp's boundaries, and interview notes.  (RE 6).

The DHO found that Petitioner committed the act of Escaping from an Open Institution, as charged, when he departed the camp without proper authorization.  He relied on the documentary evidence presented and Petitioner's own statement.  Petitioner was sanctioned to 30 days disciplinary segregation, disallowance of 27 days good conduct time, forfeit of 27 days non-vested good conduct time, loss of visiting privileges for six months, and recommendation of a disciplinary transfer.  The reasons for the sanctions were noted by the DHO:  because of the nature of the escape charges and the violation of trust afforded inmates by leaving an open facility, harsh sanctions must be imposed.  (RE 6).

Petitioner was given a written DHO report on or about June 26, 2008.  On July 28, 2008, Petitioner appealed the DHO decision to the Mid-Atlantic Regional Office of the Bureau of Prisons.  On appeal, Petitioner argued that he was not trying to escape, that he was only out of bounds by 40 yards, and that he was still on

4

federal property.  On September 12, 2008, the Regional Director denied Petitioner's appeal stating that the evidence supported the DHO's findings.  On December 29, 2009, Petitioner appealed to the Central Office, challenging the Regional Office response.  On February 24, 2009, the Central Office denied the appeal, explaining that the DHO's decision and sanctions were reasonable.  (RE 2).

Petitioner filed this habeas petition, pursuant to 28 U.S.C. § 2241, on April 28, 2009.  Respondent filed an answer to the petition on August 6, 2009.

## DISCUSSION

### A.  Legal Standard

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any

supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.   Jurisdiction**

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 544 U.S. 74 (2005).  Habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence.  See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990).  In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action.  See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.

Accordingly, this Court has jurisdiction to hear this challenge to the disciplinary sanction of loss of good time credits.

**C.     Petitioner's Claims**

Petitioner alleges that his conduct should not be deemed "escape." Petitioner argues that since the camp at which he was housed was a satellite camp, there were no fences around the camp, but only a few signs that say "out of bounds." Petitioner notes that there are 300-level code violations for "being in an unauthorized area" or "being out of bounds" for which he should have been charged, instead of the 200-level code violation for "escape," which carries harsher sanctions. He argues that the camp did not apprise him of the clear satellite boundaries, and failed to provide him with clear rules and regulations. He contends that testimony showed that he was only "40 yards from the camp's edifice, instead of the exaggerated 100 yards stated by the officer," meaning he was still on the institution's property and within its custody. (Petition, ¶¶ 11-14).

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971). Such protections

are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed.... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[2] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated."  Wolff, 418 U.S. at 557.

---

[2] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, <u>Wolff</u>, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," <u>Meyers v. Alldredge</u>, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[3] and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action.  See <u>Wolff</u>, 418 U.S. at 564-66.  Prisoners do not have a due process right of

---

[3] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing.  See <u>Ponte v. Real</u>, 471 U.S. 491 (1985).  "[P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." <u>Grandison v. Cuyler</u>, 774 F.2d 598, 604 (3d Cir. 1985).

confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. See id. at 569-70. Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. See Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[4]

In this case, Petitioner's argument that he should have been charged with "out of bounds" instead of escape has been examined in this Court. In Pierre v. Grondolsky, 08-3669 (RMB) (submitted in Respondent's Appendix to the Answer), the Honorable Renée Marie Bumb, of this Court, wrote:

> Further, this Court finds no merit to Pierre's arguments that the charge of escape cannot be supported by definition. Pierre contends that he merely went "out-of-bounds" after the count and that he had no intention of escaping the Camp. He also argues that the barnyard where he was found is part of Camp property, and only "out-of-bounds" to Camp inmates after 9:00 p.m. Consequently, at most, Pierre could be charged with a Code 316 violation, being in an unauthorized area, not escape.
>
> However, Pierre has provided no evidence to support these contentions. Officer Montgomery stated unequivocally that the salvage yard or barnyard area

---

[4] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

was not part of the satellite Camp. Even after the DHO hearing, when Pierre tried to obtain verification from BOP staff that the barnyard was considered part of the Camp property, the Program Coordinator confirmed that the fenced-off storage area is considered institution property, "but is considered outside the secure perimeter of the camp."

   Pierre now argues that because the barnyard area is institution property, he was merely "out-of-bounds" and could not be deemed as escaping. Accordingly, Pierre suggests that Code 200 is unconstitutionally ambiguous. This Court finds no merit to this argument, and instead agrees with respondent that Code 200 is constitutionally adequate in defining escape. Courts have long recognized that the degree of specificity in proscribing conduct is not as strict in the context of prison discipline as it is for imposing criminal sanctions. See, e.g., Meyers v. Alldredge, 492 F.2d 296, 310-11 (3d Cir. 1974) (prison code prohibiting "conduct prejudicial to good order, security and safety" deemed constitutionally adequate; "legalistic wrangling over whether a rule was broken may visibly undermine the administration's position of total authority, necessary for security's sake") (citations omitted); accord Hadden v. Howard, 713 F.2d 1003, 1008-09 (3d Cir. 1983).

   Therefore, based upon this evidence as relied upon by the DHO, and without any sufficiently credible contradictory evidence submitted by Pierre, except his self-serving argument that he did not intend to escape and was merely "out-of-bounds", this Court finds that Pierre's right to due process was not violated by the determination of the DHO. This Court finds no bias or abuse of discretion by the DHO in reaching his determination that Pierre committed the prohibited act of escape in violation of Code 200. Pierre's admitted and knowing unauthorized departure from custody patently is the essence of "escape." The record clearly supports the DHO's finding that Pierre could have "reasonably understood that his contemplated conduct was prohibited" pursuant to Code 200. The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt. See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the

>   decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff") (quoting <u>Hill</u>, 472 U.S. at 457).

<u>Pierre v. Grondolsky</u>, 2009 WL 2391288 (D.N.J. July 31, 2009). Likewise, in this case, the record supports the DHO's finding that Code 200 for escape was violated. As stated by the Bureau of Prisons during the course of Petitioner's administrative appeals, Petitioner's intent in going off grounds is immaterial. Petitioner admitted to going outside the permitted perimeter, seeing the boundary signs, and proceeding past them anyway. The officer's statement is consistent with Petitioner's statement, whether or not Petitioner was 40 yards away from the permitted perimeter or 100 yards. Thus, the grounds for a 200 code violation were established.

Finally, Petitioner was afforded all the due process required by <u>Wolff</u>. He was apprised of the charges in advance, he declined any staff representative or witnesses, and he was advised of the evidence relied upon and the reasons for the decision. Clearly, the statement of the reporting officer, and the statement of Petitioner himself, is sufficient to support the DHO decision. The sanctions imposed are within the range authorized for Petitioner's offense. <u>See</u> 28 C.F.R. § 541.13, Tables 3 and 4.

Therefore, Petitioner was not deprived of due process in connection with the challenged disciplinary proceeding.

**CONCLUSION**

For the reasons set forth above, the petition will be denied.  An appropriate order follows.

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: February 18, 2010